UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN DONALD ADAMS,

    Petitioner,               Civil No. 2:18-CV-13356
                                   HONORABLE DENISE PAGE HOOD
v.                               CHIEF UNITED STATES DISTRICT JUDGE

JOHN DAVIS,

    Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS***

Kevin Donald Adams, ("Petitioner"), confined at the Ionia Correctional Facility in Ionia, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for three counts of first-degree criminal sexual conduct, M.C.L.A. 750.520b; and two counts of second-degree criminal sexual conduct, M.C.L.A. 750.520c. For the reasons that follow, the petition for writ of habeas corpus is **DENIED WITH PREJUDICE.**

**I. Background**

Petitioner was convicted following a jury trial in the Livingston County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction,

1

since they are presumed correct on habeas review. *See Wagner v. Smith*, 581 F. 3d 410, 413 (6th Cir. 2009):

> At most times relevant to this case, defendant was the live-in boyfriend of the victim's mother. Although defendant is not the victim's father, he is the father of the victim's half-brother and, according to witnesses, defendant acted as "father figure" to the victim. Defendant moved out of that house sometime around December 2012, but the victim continued to have some contact with defendant thereafter. At trial, the victim testified that defendant had sexually abused her on numerous occasions, beginning when she was 9 or 10 years old. She testified to five specific sexual acts, each of which occurred before the victim reached the age of 13.
>
> The victim told her mother about the sexual abuse sometime in the summer of 2014, when she wrote her mother a note explaining what had occurred. At the time that she made this disclosure, the victim feared that she had contracted a sexually transmitted disease from defendant. [1] When asked why she had waited to report the abuse, the victim provided multiple reasons. She testified that she was scared that defendant would be "mad" if she told and that she feared he would hurt her because he was bigger than her and had been in the Army. However, she also testified that she did not think that her mother would believe her because she was only a child and that she did not want her mother to be mad and discontinue her brother's contact with defendant, adding that "I know what it's like not to be able to see my dad."
>
> After the victim disclosed the sexual abuse, her mother filed a police report and the victim participated in a forensic interview. In addition, after the victim made her allegations, Matthew Adolph, a friend of defendant's, confronted the victim, telling her that she was "about to ruin a man's life" and that she needed "to come forward and say to me right now exactly the truth." Adolph indicated that, despite this pressure, the victim "didn't back down" from her allegations.
>
> Defendant did not testify at trial. Defense counsel attempted to rebut the victim's testimony by presenting the testimony of defendant's

---

[1] It turned out that the victim had a yeast infection. (Footnote original).

father and two family friends, each of whom testified that, based upon their observations, defendant and the victim enjoyed an appropriate relationship in which defendant acted as the victim's father figure. All three testified that the victim did not appear to be scared of defendant. Defense counsel also cross-examined the victim and her mother about trips the victim took with defendant and presented photographs of these trips as evidence to show that the victim was comfortable around defendant. In closing, defense counsel argued that the victim was lying for some unknown reason, stating "[i]t's not my job to prove why she's lying just that she is." To support the assertion that the victim had lied about being sexually abused by defendant, defense counsel pointed out inconsistencies in the victim's testimony, questioned her delay in reporting the incidents, and indicated that, had the incidents actually occurred, the victim would not have been so comfortable around defendant. The jury convicted defendant as noted above, and defendant now appeals as of right.

*People v. Adams,* No. 328028, 2017 WL 694692, at * 1 (Mich. Ct. App. Feb. 21, 2017).

The conviction was affirmed. *Id., lv. den.* 501 Mich. 863, 900 N.W.2d 649 (2017).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Prosecutorial misconduct based on statements the prosecutor made during closing and rebuttal argument that allegedly shifted the burden of proof onto Adams;

II. Newly discovered evidence entitling Adams to a new trial or evidentiary hearing; and

III. Ineffective assistance of counsel where Adams' trial counsel failed to present the evidence Adams now claims is newly discovered at trial.

3

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

The Michigan Court of Appeals reviewed and rejected a portion of petitioner's prosecutorial misconduct claim under a plain error standard because petitioner failed to preserve a portion of his claim as a constitutional issue at the trial court level. The AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638(6th Cir. 2017); *cert. den.* 138 S. Ct. 1998 (2018). [2]

### III. Discussion

**A. Claim # 1. The prosecutorial misconduct claims.**

Petitioner claims he was denied a fair trial because of prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments

---

[2] Respondent urges this Court deny this portion of the claim on the ground that it is procedurally defaulted because petitioner failed to object at trial. Procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Petitioner's unpreserved prosecutorial misconduct claims are related to his preserved misconduct claims. Because the same legal analysis applies to both the preserved and unpreserved misconduct claims, it would be easier to simply address the merits of the unpreserved claims.

6

will violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his or her prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012)(quoting *Harrington*, 562 U.S. at 103). Habeas petitioners must clear a "high bar" to prevail on a prosecutorial misconduct claim. *Stewart v. Trierweiler,* 867 F. 3d at 639.

Petitioner alleges the prosecutor committed misconduct during her closing and rebuttal arguments by mentioning petitioner's failure to produce evidence, which petitioner argues improperly shifted the burden of proof to the defense.

Petitioner first points to the following arguments made by the prosecutor in her closing argument as being improper:

> And now I submit to you that [the victim] is to be believed. Ladies and gentlemen you have heard this child who is now 14 tell you about

7

incidents that happened to her starting around the age of nine or 10....
[The victim] has no reason to lie. Let's think about it. Now we all have
lied. I have told my husband no he's not gaining weight or yes the lawn
looks great when it's got some patches on it. Because sometimes we do
that. We lie for reasons. We lie to make people happy. Sometimes we
lie to get out of trouble. Kids do that a lot of times. They lie to get out
of trouble. Do those apply to [the victim]? Is she in trouble? No. There
was no evidence brought before this Court that somehow she was in
trouble. She was taken to the police station you know late in the
evening. She's been to LACASA [a non-profit association that assists
sexual assault victims]. She's gone to court before. She's been in court
now in front of 14 strangers. And sitting in a room in front of the person
who did these things to her and she said them. And she said it
consistently. And there's not one piece of evidence that she said
anything different to the witness Matt Adolph, to the police officers.
There's not one piece of evidence that she was inconsistent in her
before [sic] trip to court or here. Because she has told from her heart
the truth of what has happened to her. And is this fun? Is this something
that you do? ...

(Tr. 4/22/15, p. 89; ECF 9-3, Pg ID 519).

\* \* \*

And I know when you are listening to [defense counsel's] closing think
about it. Where's the proof of a lie? What's the motivation? There is
none. Because there is no reason but for the fact that this was a kid that
was scared and it finally boiled.

(*Id.*, p. 92, ECF 9-3, Pg ID 522).

In rebuttal, the prosecutor made the following comment that petitioner takes issue with:

Why didn't he present a witness that says victims of child sexual abuse
act a different [way?]

(*Id.*, p. 106, ECf 9-3, Pg ID 536).

8

After defense counsel objected and a bench conference was held, the prosecutor made the following remarks: [3]

> Defense counsel has stood before you and frequently she didn't act different. She should have acted differently. Where is the evidence for that? Where is the evidence that kids who have been sexually abused act differently around their families or should act in a certain way? There is no evidence and evidence isn't what comes out this mouth over here. Evidence is what comes from the witness stand. There's no evidence that that's how it happened.

(*Id.*, p. 106).

The Michigan Court of Appeals rejected petitioner's claims:

> Contrary to defendant's arguments, he has not shown plain error in the prosecutor's remarks [during her initial closing argument]. Fairly read, the prosecutor's remarks did not "assert that defendant has to prove he is not guilty." Instead, based on the evidence, the prosecutor permissibly advanced the theory that the victim was worthy of belief. And, in doing so, the prosecutor commented on the weakness of defendant's theory of the case. That is, in opening statements, the defense counsel explained that, contrary to the victim's accusations, the defense theory was that nothing happened. Then, through cross-examination of the victim and testimony from defendant's friends and father, the defense asserted the theory that the victim's allegations were not worthy of belief because she was "comfortable" around defendant, she was inconsistent in claiming to be scared of defendant while continuing to see him, and she delayed disclosing the abuse. In this context, by arguing that the victim had no reason to lie, the prosecutor did not shift the burden of proof, but merely attacked the credibility of defendant's theory of the case. We are not persuaded that such commentary was improper, particularly in view of defense counsel's attacks on the victim's credibility.

---

[3] The transcript incorrectly ascribes these comments to the judge but it is clear from both petitioner's allegation and the context of the comments in the transcript that it was the prosecuting attorney who made these remarks.

Moreover, even assuming some impropriety in the remarks specifically challenged by defendant, any prejudicial effect of the challenged comments was minimal and could have been alleviated by a timely objection and an appropriate curative instruction. Indeed, viewing the trial as a whole, it was clear that defendant was not prejudiced by the prosecutor's remarks. Elsewhere during closing arguments the prosecutor expressly acknowledged that it was her burden to prove the elements of the crime beyond a reasonable doubt. Likewise, defense counsel addressed the jury on the burden of proof during closing arguments, emphasizing that the defense did not have to introduce evidence and that the prosecutor bore the burden of proof. Further, the trial court ultimately informed the jury that it was to take its understanding of the law from the court—not the attorneys; and the trial court correctly instructed the jury on the prosecutor's burden of proof as well as the fact that defendant was presumed innocent and did not have to "prove his innocence or to do anything." Jurors are presumed to follow their instructions, and these instructions cured any prejudicial effect.

Likewise, defendant's arguments pertaining to the prosecutor's rebuttal arguments do not entitle him to relief on appeal. In her rebuttal, the prosecutor specifically addressed defense counsel's argument that the jury should conclude that the victim had fabricated the story because she did not exhibit any different behaviors after the alleged incidents occurred but instead continued to appear comfortable around defendant.

∗∗∗

To a certain extent, particularly as a response to defense counsel's closing argument, it was not improper for the prosecutor to comment on the lack of evidence supporting the defense theory that the victim should have acted differently around defendant following the sexual abuse. Admittedly, the prosecutor's phrasing is somewhat confusing and perhaps overbroad. Nevertheless, even if the prosecutor's remarks [during rebuttal] were improper, defendant would not be entitled to relief. Defense counsel objected to this statement and the trial court held a bench conference on the objection, after which the prosecutor rephrased her argument, omitting any reference to defendant's failure

> to present evidence and instead arguing that the defense theory had no basis in the evidence. Moreover, as noted, both attorneys informed the jury of the prosecutor's burden of proof, and the trial court accurately instructed the jury on the burden of proof. Given that jurors are presumed to follow their instructions, any potential error by the prosecutor was harmless.

*People v. Adams*, 2017 WL 694692, at * 3–4 (internal citations and footnote omitted).

Although a prosecutor may not comment on the failure of a defendant to produce evidence, the prosecutor may summarize the evidence and comment on its quantitative and qualitative significance. *United States v. Bond,* 22 F. 3d 662, 669 (6th Cir. 1994); *See also Byrd v. Collins*, 209 F. 3d 486, 534, n. 41 (6th Cir. 2000). A prosecutor is also free to point out the absence of any evidence that would factually support any defense theories. See *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005).

In the context of advancing the theory that the victim was worthy of belief, the prosecutor's remarks in closing argument and in her rebuttal did not shift the burden of proof because they simply commented on the credibility of the defendant's theory of the case. Fairly reading the prosecutor's remarks, she did not state that the petitioner had to prove he was not guilty. The prosecutor acknowledged that it was her burden to prove the elements of the crime beyond a reasonable doubt. However, any possible prejudice from these comments was dissipated by the judge's instructions to the jury that petitioner was presumed

11

innocent, that the prosecutor had the burden of proving petitioner guilty beyond a reasonable doubt, and that petitioner had no duty to prove his innocence. (Tr. 4/22/15, p. 110, ECF 9-3, Pg ID 540). *See Scott v. Elo,* 302 F. 3d 598, 603-04 (6th Cir. 2002). Petitioner is not entitled to relief on his first claim.

**B. Claim # 2. The newly discovered evidence claim.**

Petitioner next argues that he is entitled to habeas relief because he has newly discovered evidence that the victim was having a sexual relationship with her mother's eighteen year old boyfriend. Petitioner claims that this evidence would have been relevant because it suggests that the victim fabricated the sexual abuse allegations against petitioner because she did not want to disclose the relationship with the boyfriend to her mother after she acquired a sexually transmitted disease from the boyfriend.

Petitioner at his sentencing advised the judge that the victim had been having a sexual relationship with the mother's boyfriend and did not want to tell her mother about the relationship. Eight months after petitioner's criminal trial, the state sought to terminate the parental rights of the victim's mother as to the victim and the victim's half-brother, whose father is petitioner. The victim's mother testified that she thought that the victim and the mother's boyfriend might be having a sexual relationship, although her suspicions were based on the fact that both of them were out of the house at the same time on one occasion. The victim's

mother also testified that she thought her boyfriend and the victim were "acting very funny" and "something didn't set right" in her stomach. However, the victim's mother conceded that the victim denied a relationship with the boyfriend.

Petitioner filed in the Michigan Court of Appeals a motion to remand the case to the trial court for a new trial, which was denied. *People v. Adams,* No. 328028 (Mich.Ct.App. June 23, 2016)(ECF 9-4, Pg ID 586).

To the extent that petitioner seeks habeas relief based on his actual innocence, he would not be entitled to the issuance of a writ. In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id., See also McQuiggin v. Perkins,* 569 U.S. 383, 392 (2013)("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence"). Freestanding claims of actual innocence are not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F.3d 844, 854-55 (6th Cir. 2007)(collecting cases).

To establish a constitutional due process claim based upon a state court's denial of a motion for new trial based on newly discovered evidence, a habeas petitioner must demonstrate that the trial court's denial of his or her motion for new trial was so egregious that it violated his or her right to a fundamentally fair trial. *See Pudelski v. Wilson*, 576 F.3d 595, 611 (6th Cir. 2009).

Petitioner is not entitled to habeas relief based on this alleged newly discovered evidence because he presented no substantial evidence that the victim and her mother's boyfriend had a sexual relationship. The victim's mother's suspicion that the two may have engaged in a sexual relationship was speculative. The victim and the mother's boyfriend both denied having a sexual relationship. The only evidence that petitioner could have attempted to introduce at a new trial would be the victim's mother's unfounded allegation that the victim and the mother's boyfriend had a sexual relationship. Even if this newly discovered evidence was presented to a jury, petitioner has not shown that the result of the trial would have been different. Failure to grant petitioner's request for a new trial based on this newly discovered evidence did not deny petitioner a fundamentally fair trial or violate his right to due process of law. *Pudelski v. Wilson*, 576 F.3d at 612.

**C. Claim # 3. The ineffective assistance of counsel claim.**

In his related claim, petitioner argues that trial counsel was ineffective for failing to present evidence that the victim had a sexual relationship with her mother's boyfriend.

The Michigan Court of Appeals rejected the claim:

> In this case, defendant has not established that he was denied the effective assistance of counsel. Initially, we note that evidence of the victim's purported sexual conduct implicates Michigan's rape shield statute, MCL 750.520j. Accordingly, to present evidence of an alleged sexual relationship between the victim and another man at trial, defense counsel would have been required to make an offer of proof and to demonstrate the relevance of this evidence. MCL 750.520j(2); *People v. Hackett*, 421 Mich. 338, 350; 365 N.W.2d 120 (1984). Yet, defendant wholly fails to address the rape shield law on appeal, and there is nothing in the lower court record to demonstrate that defense counsel could have made an offer of proof that would have warranted admission of the evidence in question. In particular, there is nothing in the lower court record evincing any basis for defendant's belief that the victim had a relationship with her mother's boyfriend. Cf. *People v. Arenda*, 416 Mich. 1, 11–12, 14; 330 N.W.2d 814 (1982). Without such evidence, defendant has failed to establish the factual predicate of his ineffective assistance claim, *People v. Hoag*, 460 Mich. 1, 6; 594 N.W.2d 57 (1999), and we cannot conclude that counsel was ineffective for failing to advance the theory of a hypothetical relationship between the victim and her mother's boyfriend.

*People v. Adams*, 2017 WL 694692, at * 6.

The Michigan Court of Appeals further concluded:

> Although not part of the lower court record, even if we considered the termination transcript offered by defendant in connection with his motion to remand, defendant would not be entitled to relief. At the termination hearing, the victim's mother offered nothing but unfounded suspicions of a relationship between her boyfriend and the victim based primarily on the fact that they were both out of the house at the same time on one occasion. The victim's mother also provided vague

> impressions at the termination hearing to the effect that she thought her boyfriend and the victim were "acting very funny" and "something didn't set right" in her stomach. However, the victim's mother also acknowledged that the victim denied a relationship with the boyfriend. Moreover, the prosecutor has offered evidence that the mother's boyfriend denied any relationship with the victim. In these circumstances, speculative, vague allegations from the victim's mother are not a sufficient offer of proof that the victim had engaged in sexual conduct with her mother's boyfriend. See MCL 750.520j(2); MRE 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *People v. King*, 297 Mich. App. 465, 476; 824 N.W.2d 258 (2012); *People v. Williams*, 191 Mich. App. 269, 273; 477 N.W.2d 877 (1991). Thus, even considering the termination transcript, defense counsel was not ineffective for failing to pursue introduction of this evidence because such efforts would have been futile. See *People v. Ericksen*, 288 Mich. App. 192, 201; 793 N.W.2d 120 (2010).

*Id.,* Slip. Op. at * 6, n. 3.

A defendant must satisfy two things to establish the denial of the effective assistance of counsel. First, the defendant must demonstrate that his or her attorney's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. The defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable

16

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

The Michigan Court of Appeals concluded that any testimony concerning a sexual relationship between the victim and her mother's boyfriend would have been inadmissible under Michigan's rape-shield statute, because there was no evidentiary support for this allegation. This is an issue of state law that is binding on this Court in reviewing petitioner's state court conviction. See *Dufresne v. Palmer*, 876 F.3d 248, 258 (6th Cir. 2017)(citing *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). Because the proposed evidence of a sexual relationship between the victim and her mother's boyfriend was deemed by the Michigan Court of Appeals to be barred by Michigan's rape shield law, petitioner failed to show that trial counsel was ineffective in failing to present this evidence. *Dufresne v. Palmer*, 876 F.3d at 258 (Appellate counsel's failure to argue that trial counsel should have interviewed and presented additional witnesses at trial for criminal sexual conduct was not deficient performance, and thus did not constitute ineffective assistance of counsel, where

17

testimony by potential witness included on defense's witness list would have been inadmissible under Michigan's rape-shield statute). Petitioner is not entitled to relief on his third claim.

## IV. Conclusion

For the reasons discussed, state court adjudication of the petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Nor did the state court adjudication result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court concludes that the petitioner is not entitled to federal habeas relief on the claims contained in his petition.

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.*

at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. at 484.

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that:

(1) the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

(2) A certificate of appealability is **DENIED.**

(3) Petitioner will be granted leave to appeal *in forma pauperis.*

                                                  s/Denise Page Hood
                                                  **Chief Judge, U. S. District Court**

**Dated: May 2, 2019**